Slip Op. 14-84

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CERRO FLOW PRODUCTS, LLC, MUELLER COPPER TUBE PRODUCTS, INC., MUELLER COPPER TUBE COMPANY, INC., and WIELAND COPPER PRODUCTS, LLC, | |
| Plaintiffs, | |
| v. | Before: Jane A. Restani, Judge |
| UNITED STATES, | Court No. 13-00237 |
| Defendant, | Public Version |
| GOLDEN DRAGON PRECISE COPPER TUBE GROUP, INC., HONG KONG GD TRADING CO., LTD., GOLDEN DRAGON HOLDING (HONG KONG) INTERNATIONAL, LTD., and GD COPPER (U.S.A.), | |
| Defendant-Intervenors. | |

## <u>OPINION</u>

[Plaintiffs' motion for judgment on the agency record regarding U.S. price determination in antidumping duty review is denied.]

Dated: July 18, 2014

<u>Jack A. Levy</u>, <u>Thomas M. Beline</u>, and <u>Jonathan M. Zielinski</u>, Cassidy Levy Kent (USA) LLP, of Washington, DC, for plaintiffs.

Jennifer E. LaGrange, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendants. With her on the brief were Stuart F. Delery, Assistant Attorney General, Jeanne E. Davidson, Director, and Claudia Burke, Assistant Director. Of counsel on the brief was Daniel J. Calhoun, Senior Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce of Washington, DC.

Kevin M. O'Brien, Christine M. Streatfeild, and Yi Fang, Baker & McKenzie, LLP, of Washington, DC, for defendant-intervenors.

Restani, Judge: This action challenges the U.S. Department of Commerce's ("Commerce") final results rendered in the first administrative review of the antidumping duty order on seamless refined copper pipe and tube from the People's Republic of China ("PRC"). See Seamless Refined Copper Pipe and Tube From the People's Republic of China: Final Results and Partial Revocation of 2010/11 Antidumping Duty Administrative Review, 78 Fed. Reg. 35,251 (Dep't Commerce June 12, 2013) ("Final Results"). Plaintiffs Cerro Flow Products, LLC, Wieland Copper Products, LLC, Mueller Copper Tube Products, Inc., and Mueller Copper Tube Co., Inc. (collectively "Cerro Flow") seek remand of the Final Results, contending Commerce erred in not adjusting defendant-intervenor Golden Dragon Precise Copper Tube Group, Inc.'s ("Golden Dragon") U.S. sales prices and not applying adverse facts available ("AFA") to Golden Dragon. Rule 56.2 Br. in Supp. of Mot. for J. on the Agency R. Filed by Pls., ECF No. 29 ("Pls. Br."). Defendant United States ("the government") refutes the challenge to Commerce's U.S. price determination and, along with Defendant-Intervenor Golden Dragon, argues that the Final Results are based on substantial evidence and in accordance with law. Def.'s Opp'n to Pls.' Mot. for J. upon the Agency R., ECF No. 40 ("Def. Br."); Def.-Intvnr.'s Resp. Br. in Opp'n to Pls.' Mot. for J. on the Agency R., ECF No. 43 ("Def. Intvnr. Br."). For the reasons stated below, Commerce's Final Results are sustained.

## BACKGROUND

Following an antidumping duty order on certain copper pipes and tubes from the PRC, Commerce initiated an administrative review of the order with a period of review from

November 22, 2010, to October 31, 2011.  Initiation of Antidumping and Countervailing Duty

Administrative Reviews and Request for Revocation in Part, 76 Fed. Reg. 82,268, 82,273 (Dep't

Commerce Dec. 30, 2011); Seamless Refined Copper Pipe and Tube from Mexico and the

People's Republic of China: Antidumping Duty Orders and Amended Final Determination of

Sales at Less than Fair Value From Mexico, 75 Fed. Reg. 71,070 (Dep't Commerce Nov. 22,

2010).  In the Final Results, Commerce concluded that an adjustment to Golden Dragon's U.S.

sales prices due to an agreement related to antidumping duties[1] between Golden Dragon and

some of its U.S. customers was unwarranted.  See Memorandum Regarding Golden Dragon's

U.S. Sales Listing and Alleged Price Adjustment at 5, CD 71 at bar code 3139214-01 (June 5,

2013), ECF No. 42-1 (May 14, 2014) ("BPI Memorandum").

　　　　　Prior to the antidumping order, Golden Dragon had an agreement with some of its

U.S. customers, the contents of which are business proprietary information.  Id. at 5–6.  The

central dispute in this case is whether the agreement covers entries subject to the dumping order.

　　　　　In a new shipper review covering Golden Dragon's sales of copper tubes from

Mexico that were also subject to an antidumping order, Commerce examined a Golden Dragon

"sales agreement" and "financial statement."  See Issues and Decision Memorandum for the

Final Results of the New Shipper Review of Seamless Refined Copper Pipe and Tube from

---

[1] "Agreement" in this opinion refers to the business proprietary agreement between Golden
Dragon and some of its U.S. customers, [[
                                                          ]]  The nature and terms of the
agreement, as well as the identity of the customers, are business proprietary.  During the period
between the International Trade Commission's ("ITC") threat of injury determination and the
antidumping order, Golden Dragon [[                                    ]] to some of its U.S. customers for
pre-dumping order entries.  BPI Memorandum at 5.

*Confidential Information Deleted*

Mexico, A-201-838, at 4–5 (Sept. 20, 2012), available at

http://enforcement.trade.gov/frn/summary/mexico/2012-23686-1.pdf (last visited July 11, 2014)

("New Shipper I&D Memo").   Commerce determined an adjustment to Golden Dragon's U.S.

price was warranted to reflect "what the U.S. customer actually paid."   Id. at 5.   The new shipper

period of review, from November 22, 2010 through April 30, 2011, overlapped with the first five

months of the period of review of the administrative review at hand.   Seamless Refined Copper

Pipe and Tube from Mexico: Final Results of Antidumping Duty New Shipper Review, 77 Fed.

Reg. 59,178 (Dep't Commerce Sept. 26, 2012) ("New Shipper Review").

          At Commerce's request to provide documentation of certain agreements related to

antidumping duties with U.S. customers, following the parties' submissions of briefs and

comments to the agency, Golden Dragon submitted its 2010 financial statement, a supply

agreement between Golden Dragon and one of its U.S. customers, and a statement and

declaration from that U.S. customer.   Golden Dragon's Apr. 24, 2013 Submission, CD 66 at bar

code 3131681-01 (Apr. 24, 2013), ECF No. 42-1 (May 14, 2014).   Golden Dragon also submitted

its 2011 financial statement as part of its Supplemental Section C Questionnaire response.

Golden Dragon Supplemental Section C Questionnaire Response, Ex. SC-12, CD 38 at bar code

3076043-02 (May 18, 2012), ECF No. 42-1 (May 14, 2014) ("2011 Financial Statement").   In

response to whether Golden Dragon's U.S. customers were parties to a then-in-force agreement

regarding antidumping duties, Golden Dragon stated in its second supplemental questionnaire

that no such agreement existed.   Golden Dragon Second Supplemental Section C Response at 2,

CD 49 at bar code 3083848-01 (June 29, 2012), ECF No. 42-1 (May 14, 2014) ("Golden Dragon

Second Supplemental Section C Response").

Cerro Flow challenges two aspects of the <u>Final Results</u> and asserts:

(1) Commerce's decision not to adjust Golden Dragon's U.S. prices is unsupported by substantial evidence and contrary to law because there was clear evidence of relevant agreements between Golden Dragon and its customers during the period of review, and Commerce's decision is inconsistent with the results in <u>Seamless Refined Copper Pipe and Tube from Mexico: Final Results of Antidumping Duty New Shipper Review</u>, 77 Fed. Reg. 59,178 (Dep't Commerce Sept. 26, 2012) ("<u>New Shipper Review</u>"); and (2) Commerce's decision not to apply AFA is unsupported by substantial evidence and contrary to law because, in response to Commerce's information requests, Golden Dragon delayed providing an agreement regarding its U.S. prices and Commerce failed to explain why adverse inferences were not appropriate as a result of this delay.  Pls. Br. 9–32.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2012), which grants the court authority to review actions contesting the final determination in an administrative review of an antidumping order.  Such determinations are upheld unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

## I.    Commerce's Determination Not to Adjust Golden Dragon's U.S. Price

Cerro Flow contends that Commerce erred in failing to make a downward adjustment to Golden Dragon's U.S. prices because Golden Dragon continued to have agreements related to antidumping duties with its U.S. customers and because Commerce

determined a price adjustment was warranted in the New Shipper Review, which in Cerro Flow's

view had the same factual record as this administrative review.  Pls. Br. 9–13.  The government

argues that Commerce supported with substantial evidence its determination that Golden Dragon

did not have an agreement with its U.S. customers during the period of review affecting the

actual U.S. price, and that Commerce is not bound by its determination in the New Shipper

Review.  Def. Br. 12, 25.  The court will address each of these issues in turn.

> A.    Commerce reasonably found that Golden Dragon did not have an
>        agreement with its customers that affected the U.S. price paid or payable
>        during the period of review.

Commerce determined that Golden Dragon did not continue its agreement related

to antidumping duties with its U.S. customers for period-of-review sales.  BPI Memorandum at

5.  Commerce relied on four documents on the record to support its finding: 1) a pre-antidumping

duty order memo between Golden Dragon and one of its U.S. customers ("the Memo");[2] 2)

Golden Dragon's 2010 and 2011 financial statements; 3) a supply agreement between Golden

Dragon and one of its U.S. customers;[3] and 4) statements from one of Golden Dragon's U.S.

customers.[4]  Id. at 5–7.  Commerce found particularly determinative the absence of any relevant

---

[2] The Memo refers to the pre-antidumping duty order, [[
                                                                                    ]].  Memo, bar code
3131681-01 (June 3, 2010), ECF No. 42-1 (May 14, 2014).

[3] "Supply agreement" in this opinion refers to the supply agreement effective [[              ]]
between Golden Dragon and [[         ]].  Supply Agreement, bar code 3065670-01 (July 1,
2011), ECF No. 42-1 (May 14, 2014).

[4] The statements are the confirmation letter and declaration from [[          ]].  See Letter, bar
code 3131681-01 (June 6, 2012), ECF No. 42-1 (May 14, 2014); Declaration, bar code 3131681-
                                                                                    (continued...)

provision related to U.S. prices in the 2011 financial statement and supply agreement, when such

a provision existed in the 2010 financial statement and the Memo.  Id.

          The burden of substantial evidence demands "more than a mere scintilla" of

evidence; the burden is met when there exists "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  Consol. Edison Co. v. NLRB, 305 U.S. 197,

229 (1938).  Commerce's determination may be supported by substantial evidence "[e]ven if it is

possible to draw two inconsistent conclusions from evidence in the record."  Am. Silicon Techs.

v. United States, 261 F.3d 1371, 1376 (Fed. Cir. 2001) (citing Fujitsu Gen. Ltd. v. United States,

88 F.3d 1034, 1044 (Fed. Cir. 1996)).

          The record before Commerce includes evidence that a reasonable mind might

accept as adequate to support Commerce's determination that Golden Dragon did not maintain

an agreement related to antidumping duties with its U.S. customers during the period of review.

Although Commerce and Cerro Flow drew two inconsistent conclusions from the record,

Commerce's determination is supported by substantial evidence.

          1.      The Memo

          Cerro Flow contends the Memo, which dealt with preliminary antidumping duty

cash deposits, applied to sales during the period of review based on the plain language of several

clauses in the Memo.[5]  Pl. Br. 19–21.  Commerce found that the Memo does not reveal the

--------

[4](...continued)
01 (Oct. 31, 2012), ECF No. 42-1 (May 14, 2014).
[5] Cerro Flow relies on the differences between clause seven and clauses eight, nine, and ten of the
Memo to show the [[                    ]] between Golden Dragon and [[          ]] is not altered
                                                                            (continued...)

*Confidential Information Deleted*

existence of an agreement related to antidumping duties during the period of review.[6]  See BPI

Memorandum at 6–7.  Commerce based its determination on the fact that the Memo is

ambiguous at best and does not state explicitly that the increased prices and other aspects of the

agreement are to remain effective during the period of review.  Id.; Memo at 1.  Although the

Memo does not define its effective period, Commerce reasonably interpreted it to apply to the

provisional measures period, because under 19 U.S.C. § 1673e(b)(2), after an affirmative ITC

finding based only on a threat of material injury, U.S. Customs and Border Protection must

refund cash deposits on sales during the provisional measures period.  Commerce reasonably

concluded that the agreement covered only deposits made during the provisional measures period

and not cash deposits made during the period of review.  See BPI Memorandum at 7.

---

(...continued)
by any events coinciding with the end of the provisional measures period and was still in effect
during the period of review of this administrative review.  Pls. Br. 19–20.  Clause seven states
[[

                                                                              ]], but Cerro Flow contends
that the other clauses do not specify that [[
        ]].  Memo at 1.

[6] The Memo, [[                          ]], states in part: [[



                    ]]  Memo at 1–2.

*Confidential Information Deleted*

Cerro Flow argues that one phrase of the Memo[7] can apply only to the period of review as Commerce can reduce antidumping margins only following an administrative review. Pls. Br. 20–21.  Commerce found the clause to be ambiguous at best.  <u>BPI Memorandum</u> at 7. Because the language of the Memo appears ambiguous, as Commerce could reduce antidumping margins in proceedings other than administrative reviews, such as between the preliminary and final determinations in the investigation, Commerce's interpretation of the Memo is not unreasonable.  Commerce had an adequate basis for interpreting the Memo to apply solely to the provisional measures period.

2.     Financial Statements

Cerro Flow argues that Golden Dragon's 2010 and 2011 financial statements establish that Golden Dragon continued an agreement related to antidumping duties with some of its U.S. customers and that its U.S. customers continued to benefit from the agreement during the period of review.  Pls. Br. 15–16.  Cerro Flow contends that a note in the 2010 financial statement refers to an agreement related to antidumping duties.  <u>Id.</u> at 15.  Cerro Flow further contends that the agreement was still in place in 2011, even though no corresponding note was in the 2011 financial statement.  <u>Id.</u>  Commerce found that Golden Dragon's 2011 financial statement demonstrated no agreement on antidumping duties between Golden Dragon and its U.S. customers existed during the period of review.  <u>BPI Memorandum</u> at 6–8.  Commerce

---

[7] Cerro Flow relies on the phrase [[

]]  Pls. Br. 20 (emphasis added).

*Confidential Information Deleted*

primarily relied on the absence of any disclosure of existing or future agreements in the 2011

financial statement, as compared to the 2010 note, which in Commerce's view referred only to an

agreement during the provisional measures period.  Id. at 8.  Additionally, Commerce relied on

the fact that Golden Dragon's statements were audited, and therefore, such an agreement was

required to have been disclosed in the statement, as it would materially affect Golden Dragon's

financial position, and would constitute significant information for potential investors and

lenders.  Id. at 7–8.[8]

        The 2010 note[9] is a broad statement that does not specify a time period.  In

isolation, it could be read to apply broadly and state the existence of an ongoing agreement.  See

Pls. Br. 15–17.  When read in the light of the 2011 financial statement, however, the note also

could be read to have described an agreement related to antidumping duties that was effective

solely during the provisional measures period.  In reviewing the note, the court finds it to be a

broad statement that could support either of the parties' two inconsistent interpretations and that

Commerce's conclusion, thus, is adequately supported.

---

[8] Contrary to Cerro Flow's argument, audited statements may have weight even if a company is not publicly held.

[9] [[



        ]]

2010 Financial Statement, bar code 3131681-01 (July 22, 2011), ECF No. 42-1 (May 14, 2014).

*Confidential Information Deleted*

3.      Supply Agreement

Golden Dragon submitted a supply agreement[10] with one of its U.S. customers. Although the supply agreement impacts U.S. prices, Commerce distinguished it from the Memo in that the supply agreement does not alter prices in the same way.  BPI Memorandum at 6. Cerro Flow contends that the supply agreement does not change Golden Dragon's practice that would require an adjustment to its U.S. prices.  Pls. Br. 17–20.  Commerce reasoned that the supply agreement was ambiguous.[11]

Although the record evidence is ambiguous and two inconsistent conclusions could be drawn from it, Commerce's conclusion is reasonable and supported by substantial evidence because although the supply agreement discusses U.S. prices in the context of the antidumping order, there is no clause similar to the relevant clause contained in the Memo.  The court therefore will sustain Commerce's conclusion.

---

[10] The supply agreement was [[                                           ]].  Supply Agreement at 1.  Although the supply agreement includes a [[

                                                                                          ]].  Id. at 7; see BPI Memorandum at 6.

[11] Cerro Flow justifies its conclusion by relying upon the inclusion of the phrase that all goods in [[                                              ]], [[                   ]] in the supply agreement.  Pls. Br. 17–18 (quoting Supply Agreement at 8). Commerce's reasoning is based on the words [[                                                                ]] not being defined in the supply agreement.  Def. Br. 23.  The government clarifies that even assuming [[                                                          ]], the Memo's agreement related to antidumping duties only referred to [[          ]] during the provisional measures period. Id.  Commerce, therefore, reasonably concluded [[                         ]] referred to Golden Dragon's current practice of not having a [[          ]] agreement in place with its customers, or in the alternative, that it referred to Golden Dragon's practice of [[                          ]] only during the provisional measures period.

4.      Letter and Declaration from a U.S. Customer

Golden Dragon submitted a letter[12] and declaration[13] from one of its U.S.

customers, which appears to support its position, but which Cerro Flow contends does not alter

its interpretation of the Memo that expressly contradicts Commerce's conclusion that the Memo

applied only to the provisional measures period.  Pls. Br. 21–22.  Because Commerce did not rely

directly on the customer letter and declaration for its determination, but instead supported its

determination with other evidence that the letter and declaration corroborate, the court need not

decide whether relying on these documents alone would amount to substantial evidence

supporting Commerce's conclusion.  BPI Memorandum at 7.

In reviewing the evidence on the record, it appears that much of the evidence is

ambiguous and might be construed to support either Commerce's or Cerro Flow's conclusions.

Although perhaps inconsistent conclusions could be drawn from the record, there is no clear

evidence in Cerro Flow's favor, and imposing additional duties in such a situation is neither

required nor necessarily desirable.  The court concludes that Commerce's determination that

Golden Dragon no longer has any agreements related to antidumping duties with its U.S.

---

[12] The letter states Golden Dragon's customer agreed to [[

                                                                                   ]].  See Letter at 1.  The letter stipulates the agreement
to [[                              ]] is only [[              ]].  Id.

[13] The declaration expressly states that Golden Dragon and its U.S. customer did not have a
[[          ]] agreement in effect for sales from November 22, 2010, through October 31, 2011, and
that the customer in question would not, nor had an expectation to, receive [[          ]] based on
the final results of the first administrative review of the antidumping duty order.  See Declaration
at 1.

*Confidential Information Deleted*

customers is supported by substantial evidence and is a reasonable conclusion based on this

record.

        B.    <u>The New Shipper Review determination does not require a similar result here.</u>

      Cerro Flow contends that Commerce failed to provide a rationale for not

following its <u>New Shipper Review</u> determination that an adjustment to Golden Dragon's U.S.

sales prices was warranted.  Pls. Br. 22.  According to Cerro Flow, the public <u>New Shipper I&D</u>

<u>Memo</u> indicates that Commerce determined that Golden Dragon's U.S. sales prices had to be

adjusted, based on "an agreement" and Golden Dragon's 2010 financial statement, which Cerro

Flow claims were also part of the record of this administrative review.  <u>Id.</u> at 22–23.  Cerro Flow

concluded that Commerce must reach the same determination here as in the <u>New Shipper</u>

<u>Review</u>, at least for the six-months overlap between the <u>New Shipper Review</u> and the

administrative review at issue, or explain the differences between the two records that made

Commerce reach different findings.  <u>Id.</u> at 23–24.  Commerce rejected Cerro Flow's contentions,

explaining that it cannot review evidence from the <u>New Shipper Review</u> that is not part of the

record of this administrative review.  <u>BPI Memorandum</u> at 5.  The government contends that

Commerce's reasoning for adjusting Golden Dragon's U.S. prices in the <u>New Shipper Review</u> is

contained in a proprietary memorandum that is not part of the record in this proceeding, and that

it cannot be confirmed that all of the information that formed the basis for Commerce's decision

in the <u>New Shipper Review</u> was also available to Commerce in this administrative review.  Def.

Br. 7, 27–28; <u>see</u> New Shipper I&D Memo at 4–5.[14]

[14] Golden Dragon contends the two records are "notably different."  Def. Intvnr. Br. 17.  Golden
Dragon maintains that the administrative review record contains more information than the

                                                      (continued...)

Commerce enjoys considerable discretion in conducting investigations and reviews under the antidumping statute, particularly in defining the scope of its inquiry and in making decisions regarding relevant evidence. See E.I. DuPont de Nemours & Co. v. United States, 22 CIT 19, 32 (1998). Commerce's longstanding practice, upheld by the court, is to treat each segment of an antidumping proceeding, including the antidumping investigation and the administrative reviews that may follow, as independent proceedings with separate records, which lead to independent determinations. See id.; Outokumpu Copper Rolled Prods. AB v. United States, 17 CIT 848, 854, 829 F. Supp. 1371, 1377 (1993) (stating that it is well-established that antidumping investigations and administrative reviews are wholly independent proceedings).

Commerce, however, may not shroud its determinations with blanket assertions that certain facts on the record are business proprietary in order to come to different determinations on identical facts. That is, under the proper restraints, the same evidence may be submitted in different proceedings in order to prevent arbitrariness. Although it often will be the case that records in different proceedings are dissimilar, Commerce must treat similarly situated parties consistently. SKF USA Inc. v. United States, 263 F.3d 1369, 1382 (Fed. Cir. 2001) ("[A]n agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently."). If Commerce can't explain its action upon judicial review, remand for such a purpose may be required. The two records at issue in this case, however, are clearly different.

---

[14](...continued)
record of the New Shipper Review, including: 1) Golden Dragon's 2011 financial statements, 2) statements from [[          ]] indicating it does not expect any [[          ]], and 3) the supply agreement. Id.

*Confidential Information Deleted*

Although Commerce failed to explain fully why the new shipper and administrative review records were not similar, the record makes clear that Commerce considered additional evidence here that could not have been part of the New Shipper Review, as the documents are dated or became effective after the new shipper period of review.  2011 Financial Statement (Mar. 4, 2012); Letter (June 6, 2012); Declaration (Oct. 31, 2012); Supply Agreement (July 1, 2011).

Commerce properly reviewed the evidence on the present record and was not bound by its determination based on a different record in the New Shipper Review that an adjustment to Golden Dragon's U.S. prices was warranted.  Commerce supported its independent determination not to adjust Golden Dragon's price in this administrative review with substantial evidence.  Therefore, Cerro Flow has not demonstrated that Commerce's determination was arbitrary.

## II. Commerce's Determination Not to Apply AFA

Cerro Flow argues that Commerce's decision not to apply AFA is unsupported by substantial evidence and contrary to law.  Pls. Br. 27.  Cerro Flow contends the application of AFA was warranted because Golden Dragon withheld information Commerce explicitly requested on multiple occasions and did not cooperate to the best of its ability.  Id.  Cerro Flow focuses on Golden Dragon's submission of the Memo and its 2010 financial statement four weeks before the expiration of the extended deadline.  In Cerro Flow's view, these documents are evidence of an agreement with customers regarding antidumping duties and refute Golden Dragon's assertions to the contrary in its questionnaire responses.  Id. at 3, 27–28.  Furthermore, Cerro Flow argues that Commerce's failure to provide its reasoning for not applying AFA is

sufficient to require remand.  Id. at 27.

Commerce exercises discretion in deciding whether or not to make an adverse

inference against a party.  Cf. Timken U.S. Corp. v. United States, 28 CIT 62, 84–85, 310 F.

Supp. 2d. 1327, 1346 (2004) (analyzing International Trade Commission's ("ITC") discretion

under same statute authorizing Commerce to apply adverse inferences).  Section 1677e of Title

19 of the U.S. Code states that Commerce "may use an inference that is adverse to the interests

of [a] party" that "has failed to cooperate by not acting to the best of its ability to comply with a

request for information."  19 U.S.C. § 1677e(b) (emphasis added).  The statute explicitly states

Commerce "may," not must or should, apply adverse facts when a party fails to cooperate.  Id.  In

Timken, the court held that neither section 1677e's plain language nor its legislative history

obligated the ITC to make adverse inferences in any situation.  See Timken, 28 CIT at 85.

Likewise, Commerce has no obligation to draw such inferences.

Commerce generally has a duty to explain the grounds for its determination.

NMB Sing. Ltd. v. United States, 557 F.3d 1316, 1319 (Fed. Cir. 2009); Timken Co. v. United

States, Slip Op. 14-51, 2014 WL 1760033, at *7 (CIT May 2, 2014); see also 19 U.S.C.

§ 1677f(i)(3)(A) (requiring Commerce to include an explanation of the basis for its

determination).  If an agency's explanation is not perfectly presented, a court may find that the

agency adequately explained its determination if the agency's line of reasoning is "reasonably

discernable."  NMB Sing. Ltd., 557 F.3d at 1319.  Additionally, Commerce is not required to

affirmatively prove a party's cooperation.  See  AK Steel Corp. v. United States, 28 CIT 1408,

1417, 346 F. Supp. 2d 1348, 1355 (2004) (rejecting the argument that Commerce must prove that

a party cooperated to the best of its ability every time that the agency decides not to apply adverse

facts available).

Commerce apparently found that Golden Dragon complied with all of
Commerce's requests for information concerning Golden Dragon's agreement with its customers.
See Def. Br. 30.  Cerro Flow argues that Golden Dragon misrepresented that it had no agreement
related to antidumping duties with its U.S. customers when it first answered Commerce's two
requests and only later submitted evidence of such an agreement in the Memo and 2010 financial
statement.[15]  Pls. Br. 27–28.  The government, however, notes that Commerce used the present
tense in its requests for information regarding agreements, and that at the time of Golden
Dragon's answers, Golden Dragon did not have any relevant agreements in place with its U.S.
customers.  Def. Br. 32.  The government also noted there was no indication that Golden Dragon
had submitted false evidence.  Id.

Golden Dragon answered every request from Commerce, and its responses were
timely.  See Pls. Br. 3 (summarizing responses).  Commerce therefore reasonably found that
Golden Dragon cooperated to the best of its ability and submitted accurate information about the
existence of relevant agreements at that time based on the narrow questions asked by Commerce.

Although, Commerce's explanation of its determination not to apply AFA was not
presented perfectly, the agency's line of reasoning is reasonably discernable.  The Final Results

---

[15] In its Second Supplemental Questionnaire C Response submitted on April 19, 2012, Golden
Dragon answered that "[t]here is no such agreement between [[                    ]] and its
customers establishing an [[                                                   ]]."  Golden
Dragon Second Supplemental Section C Response at 2.  The response also stated that Golden
Dragon "did not [[
                                        ]]," and [[
        ]].  Id. at 1–2.

*Confidential Information Deleted*

and <u>BPI Memorandum</u> state Golden Dragon placed additional evidence on the record at

Commerce's request only one day after Commerce, using more expansive questions, requested it.

<u>Final Results</u>, 78 Fed. Reg. at 35,251; <u>BPI Memorandum</u> at 6.  Consequently, Commerce's

determination not to apply AFA in this administrative review was well within its discretion and

is sustained.

## CONCLUSION

As discussed above, Commerce supported with substantial evidence its

determination not to adjust Golden Dragon's U.S. sales prices based on its conclusion that

Golden Dragon had no agreements related to antidumping duties with its customers during the

period of review.  Commerce's decision not to apply AFA was reasonable and within its

discretion.  Accordingly, both decisions are in accordance with law.  For the reasons stated

above, the court sustains Commerce's <u>Final Results</u>.  Plaintiffs' motion for judgment on the

agency record is denied.  Judgment will issue accordingly.


                                                                        /s/ Jane A. Restani
                                                                         Jane A. Restani
                                                                              Judge


Dated: July 18, 2014
          New York, New York